**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

STEVEN MILNER,

      Petitioner,

v.                                  Case No. 16-10127

BONITA HOFFNER,

      Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS**
**CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND**
**DENYING LEAVE TO APPEAL IN FORMA PAUPERIS**

Christina Hemphill, working with the Metro Life International Church in Detroit visited the nearby Campbell Apartments so that children living there might participate in the church's youth programing. She testified that when she entered the lobby, Petitioner Steven Milner and two other men grabbed her, punched her, and dragged her into a stairwell where she was repeatedly raped.

Milner was convicted after a jury trial in Wayne County Circuit Court of three counts of first-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b, and one count of second-degree criminal sexual conduct. MICH. COMP. LAWS § 750.520c. He was sentenced to two terms of 22 to 80 years for the first-degree convictions and one term of 5 to 15 years for the second-degree conviction, and now brings this petition for a writ of habeas corpus under 28 U.S.C. § 2254, raising seven claims: (1) Petitioner was denied the effective assistance of trial counsel when his trial attorney "sabotaged all defenses to the charges," (2) the prosecutor committed misconduct, (3) the sentencing

guidelines were incorrectly scored, (4) Petitioner was denied the effective assistance of appellate counsel, (5) Petitioner was denied the effective assistance of trial counsel when his attorney failed to object to a reference to Petitioner's police mugshot, (6) the trial court did not have jurisdiction to try the case because of defects in the charging documents, and (7) the trial court did not have jurisdiction to try the case because the district court bind-over was not filed in the circuit court. The petition will be denied because Petitioner's claims are without merit. The court will also deny a certificate of appealability, and deny leave to appeal *in forma pauperis*.

## I. BACKGROUND

Petitioner's convictions stem from allegations that he and two other men abducted a woman in an apartment building and sexually assaulted her. Petitioner was tried simultaneously with his brother, Tarquinis Heard, but before separate juries. The third assailant was never identified.

At trial, Christina Hemphill testified that she worked with the Metro Life International Church in Detroit. On the afternoon of March 17, 2011, she went to the Campbell Apartments to invite children living there to participate in the church's youth programing. Hemphill testified that Heard opened the door to let her into the lobby. Heard and two other men, including Petitioner, then grabbed her. Petitioner punched Hemphill in the stomach, and the men then dragged her into a stairwell.

Hemphill testified that Petitioner told her that he would, ". . . enjoy [having sex with] one of God's wives." (Dkt. #11-9, Pg. ID 806.) Petitioner then pulled down her jeans and her underwear. Petitioner put his penis into her vagina. Hemphill screamed, and then Heard put his penis into her mouth. A third man held her down while the other

2

two assaulted her. The third man pulled up her shirt and touched her breasts. Petitioner ejaculated inside her, and Heard ejaculated on her face. Hemphill described how she was finally able to run away when another woman came into the stairwell and yelled.

Hemphill testified that she went to her pastor's home, who was out of town, and she showered. Hemphill did not immediately call the police because she wanted to forget about the incident. Hemphill was unable to do so, and she told her pastor what happened several days after the assault.

Hemphill testified that on March 31, 2011, on the advice of her pastor, she reported the assault to the police. She met with a sketch artist and gave a description of the two men she saw. She identified the sketches for the jury.

Hemphill testified that she knew Petitioner's first name, Steve, from prior visits to the Campbell Apartments. During the afternoon of March 31, 2011, two officers came to her home and showed her three photographic lineup sheets. She picked Petitioner's photograph on the first sheet because it jumped out at her as the man who raped her. She picked Heard's photograph out on the second sheet.

Hemphill testified she had seen Petitioner five or six times before the date of the assault. He flirted with her, but she told him she was devoted to God and ministry. She once invited Petitioner to her church, but he never went there. On another occasion, Petitioner helped Hemphill carry a television set. Hemphill also had seen Heard at the apartment building four to six times before the assault.

During cross examination, Hemphill testified that she did not think about the fact that she was destroying physical evidence when she took a shower. She explained that

she was trying to block the assault out of her mind. She washed her clothing for the same reason.

Patricia Marks testified that she was the assistant pastor at Metro Life International Church. Hemphill was her assistant. Marks testified that since the date of the incident Hemphill changed from being a confident and strong person, to being fearful, scared, and easily given to tears. Marks testified that she could tell something was wrong with Hemphill from text messages she received on the date of the incident. Marks also received text messages from other church members worrying about Hemphill.

Marks testified that Hemphill was upset when she met with her on March 21, 2011. Finally, on on March 31, 2011, Marks and a police officer who was a deacon at the church convinced Hemphill to report the assault.

Marks had gone with Hemphill to the Campbell Apartments on two prior occasions. She stated that they encountered three men in the lobby. She said that the men stopped them and asked why they were there. Marks said that the men teased them. She said that one of the men referred to Hemphill as his future wife. Marks, however, could not identify either Petitioner or Heard as the men in question.

Sgt. Bernadette Dunbeck of the Detroit Police Department testified that on March 31, 2011, she was given physical descriptions of the suspects in this case. She took a statement from Marks that afternoon, who also provided identification information to her. Dunbeck looked through old police reports for the Campbell Apartments and found one from March 29, 2011, that reported that both of the defendants were arrested there that day. Dunbeck testified that she obtained the defendants' mugshots, and she put

4

together the photographic lineups shown to the complainant. Hemphill identified both

defendants from the lineups.

Officer Robert Kane testified that he visited Hemphill at her home on March 31,

2011, and showed her two photographic lineups. Kane used a mugshot of Petitioner

from a prior arrest in the array of photos. Hemphill picked Petitioner out immediately.

Kane showed her the second lineup, and she picked Heard out immediately as well.

Kane testified that when Hemphill picked Petitioner's photograph, she indicated, "He put

his penis in my vagina." (Dkt. #11-9, Pg. ID 908.) Hemphill wrote, "when I screamed, he

put his penis in my mouth," on the sheet containing Heard's photograph. (*Id.*, Pg. ID

909.)

Following his conviction and sentence, Petitioner filed a claim of appeal in the

Michigan Court of Appeals. His appellate brief raised the following claims:

> I. Was the Defendant-Appellant denied the effective assistance of counsel
> at trial where counsel failed to object to police testimony that the
> photographic lineup shown to the complainant included the
> Defendant-Appellant's mugshot for an arrest made two days prior to the
> date of the lineup?
>
> II. Did the insufficient evidence presented during the
> Defendant-Appellant's trial on the element of identity, to support the jury's
> verdicts of guilty beyond a reasonable doubt of three counts of first-degree
> criminal sexual conduct (CSC) and one count of second degree CSC,
> constitute a denial of the due process of law guaranteed by the Fifth
> Amendment to the United States Constitution?
>
> III. Do the Defendant-Appellant's three concurrent sentences of from
> twenty-two years to eighty years, imposed pursuant to his convictions for
> three counts of first-degree CSC, constitute a violation of the guarantee
> against cruel and unusual punishment provided by the United States
> Constitution and the guarantee against cruel or unusual punishment
> provided by the Michigan Constitution?

The Michigan Court of Appeals affirmed Petitioner's convictions and sentence in an unpublished *per curiam* opinion. *People v. Milner*, No. 306593, 2013 WL 968100, at *1-3 (Mich. Ct. App. Feb. 21, 2013). Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims. The Court denied the application because it was not persuaded that the questions presented should be reviewed. *People v. Milner*, No. 146919, 494 Mich. 871, 832 N.W.2d 221 (Mich. 2013) (table).

Petitioner then filed a petition for writ of habeas corpus in this court, and he simultaneously filed a motion to stay his petition and hold it in abeyance so he could exhaust further claims in the state courts. The court denied the motion to stay, and Petitioner then successfully moved to dismiss the petition without prejudice. See *Milner v. Hoffner*, No. 14-12329 (E.D. Mich. July 18, 2014).

Petitioner returned to the trial court and filed a motion for relief from judgment, raising what now form his first through fourth habeas claims. The trial court denied the first three claims under Michigan Court Rule 6.508(D)(2), finding that the claims were barred from review because they had been raised on direct appeal. (Dkt. #11-17, Pg. ID 1385-86.) Respondent concedes that the state court's reliance on this rule was mistaken. (Dkt. #10, Pg. ID 208-09.)

Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals, but the state court again denied relief under Rule 6.508(D)(2). *People v. Milner*, No. 325571 (Mich. Ct. App. March 12, 2015). Petitioner sought leave to appeal in the Michigan Supreme Court, raising the same claims along with what now form

Petitioner's sixth and seventh claims. The Supreme Court denied relief under Rule 6.508(D). *People v. Milner*, 872 N.W.2d 449 (Mich. 2015) (table).

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (*per curiam*) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Woods v. Etherton,* 136 S.

7

Ct. 1149, 1152 (2016) (habeas relief precluded if state court decision is "not beyond the realm of possibility [from what] a fairminded jurist could conclude.").

"Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

### III. DISCUSSION

### A. Ineffective Assistance of Trial Counsel

Petitioner's first and fifth claims assert that he was denied the effective assistance of trial counsel. In support of this claim Petitioner filed an affidavit, wherein he states that he met with his trial attorney only three times prior to trial. (Dkt. #1-1, Pg. ID 89-90.) He states that his attorney advised him to take a plea bargain because his brother was placing the blame on him. *Id.* Petitioner alleges that he told his attorney that he was at home watching television on the date in question, and that his mother was working at her home office and could vouch for him. *Id.* He asserts that his attorney told him he could not force the victim to take a polygraph examination, and that he could not take one himself because it would not be admissible. *Id.* Petitioner states that he told his counsel about a witness, Nafeesah Binyard, who said she was with the victim elsewhere on the afternoon in question. *Id.*

8

Petitioner also submitted an affidavit from his mother, Toni Hicks, stating that she was working in her home office on the date in question. (Dkt. #1-1, Pg. ID 92.)  She states she was available to testify at her sons' trial. *Id.* Hicks "made initial inquiries" with the victim's church about the case, but the investigator never contacted her. *Id.*

Finally, Petitioner has submitted the affidavit of Nafeesah Binyard. (Dkt. #1, Pg. ID 94.) The affidavit states that Binyard was with Hemphill and one other person at the Metro Life International Church in Detroit between 2:00 and 3:00 p.m. on the date in question. *Id.* She states that she was a minor at the time of Petitioner's trial, and her parents did not want her to come forward with her information at the time. *Id.*

To show that he was denied the effective assistance of counsel under federal constitutional standards, Petitioner must satisfy a two-prong test. First, he must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, Petitioner must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland*, 466 U.S. at 689. Second, Petitioner must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "*Strickland's* test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir.

9

2011) (quoting *Harrington*, 562 U.S. at 112). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. See *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

### 1. Right to Take a Polygraph

Petitioner asserts that his attorney was ineffective for failing to assert Petitioner's right under Michigan law to take a polygraph examination under Mich. Comp. Laws § 776.21. He asserts that his attorney dismissed his request to take a polygraph examination because the results would not be admissible at trial. He argues that his attorney was more concerned with convincing Petitioner to take a plea than pursuing this line of defense. The claim was presented to the state courts in Petitioner's state post-conviction review proceeding, and it was denied under Rule 6.508(D)(2) under the mistaken belief that it had been raised during direct review. Review is therefore *de novo*, and § 2254(d) does not apply. See *McKenzie v. Smith*, 326 F.3d 721, 726-27 (6th Cir. 2003) (erroneous application of Rule 6.508(D)(2) does not constitute adjudication of the merits of claim, and review of claim is therefore *de novo*).

Petitioner's counsel did not perform deficiently by advising him not to take a polygraph examination. *See Sousa v. Warren*, No. 07-14112, 2010 WL 3937163, at *14-15 (E.D. Mich. Sept. 30, 2010). If Petitioner made any incriminating statements during the examination, they would have been admissible against him at trial. *See Wyrick v. Fields*, 459 U.S. 42, 48 (1992). And even if Petitioner passed the examination, the results of the test would not have been admissible. *See People v. Phillips*, 666

10

N.W.2d 657, 661 (Mich. 2003). Petitioner's argument that the prosecutor may have dropped the charges if he passed the examination is too speculative of a basis as to compel defense counsel to demand a polygraph examination. Rather, the decision to forgo a polygraph examination was a reasonable strategic decision that did not constitute deficient performance under the circumstances of this case.

### 2. Failure to Utilize Private Investigator

Petitioner notes that the trial court appointed a private investigator to assist the defense. (Dkt. #11-5, Pg. ID 432.) He asserts that counsel never utilized the investigator, however, because no defense witnesses were called at trial. This allegation is also subject to *de novo* review because of the erroneous application of Rule 6.508(D)(2) by the state courts.

The claim fails, however, because Petitioner does not state with any specificity what evidence a private investigator would have uncovered or how the use of the investigator would have benefitted the defense. Conclusory allegations of ineffective assistance of counsel do not merit relief. See *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). To the extent Petitioner asserts that the investigator would have helped with calling his mother or Nafeesha Bingard as defense witnesses, those allegations are discussed below.

### 3. Failure to Call Petitioner's Mother as Defense Witness

Petitioner asserts that his mother, Pastor Toni Higgs, was willing to testify at trial, but his counsel failed to call her as a defense witness. He asserts that his mother would have testified that Petitioner was at home watching television on the afternoon of March

17, 2011, and not at the Campbell Apartments. This claim is subject to *de novo* review for the reasons discussed above.

Generally speaking, affidavits from family members are viewed with suspicion due to their relationship to the petitioner. *McCray v. Vasbinder*, 499 F.3d 568, 573-74 (6th Cir. 2007). But even setting Higgs' relationship with Petitioner aside, her affidavit does not support his claim. Higgs states only that she was home on the date of the incident, and that she was available to testify at trial. Strikingly missing from the Higgs affidavit is anything having to do with *Petitioner's* activities or whereabouts. It provides no exculpatory information. The totality of the relevant portion of the statement says: "I was working on March 17, 2011. I work in an office in my home." (*See* Dkt. #1-1, Pg. ID 92.)

Accordingly, Petitioner has failed to show that he was prejudiced by his counsel's failure to call his mother as a witness for the defense. See *Dell v. Straub*, 194 F. Supp. 2d 629, 650 (E.D. Mich. 2002) (trial counsel's failure to present a defense witness does not amount to the ineffective assistance of counsel, because Petitioner failed to specify the content of his testimony).

### 4. Failure to Impeach Victim

Petitioner asserts that his counsel failed to impeach Hemphill based on the statement given by Nafeesha Binyard. Petitioner asserts that Binyard stated that Hemphill was with her and another person at the International Church in Detroit between 1:00 p.m. and 3:00 p.m. on the date of the incident. This claim is subject to *de novo* review as well.

12

Binyard's affidavit indicates that she was a minor at time of the prosecution and that her parents did not want her to come forward with her information. (Dkt. #1-1, Pg. ID 94.) Accordingly, other than Petitioner's self-serving affidavit that he told his counsel about Binyard, there is no indication in the record that defense counsel or an investigator would have discovered Binyard or her claim that she was with Hemphill on the afternoon in question. That is, Petitioner has failed to demonstrate that his counsel performed deficiently in failing to discover Binyard as a potential defense witness.

Moreover, even assuming that counsel was deficient for failing to call Binyard as a defense witness, he has not shown *Strikland* prejudice. Hemphill testified that she went to the Campbell Apartments "in the afternoon hours" of March 17, 2011. (Dkt. #11-9, Pg. ID 799.) She stated "it was early afternoon, maybe between one and three. I can't remember the exact time." *Id.* Hemphill also testified at the preliminary examination that it was "hard to remember the exact time." (Dkt. #11-2, Pg. ID 293.) Given the fact that Hemphill was uncertain as to the time of the assault, Binyard's statement that she was with Hemphill between 2:00 and 3:00 p.m. was not inconsistent with the prosecutor's case. Indeed, Hemphill testified at trial that she was working at the church before she went to the apartments building on the day of the assault. (Dkt. #11-9, Pg. ID 843.)

The court finds that given Hemphill's uncertainty about the time of the assault, and given her testimony that she was at the church before she went to the apartments, Petitioner has failed to demonstrate a reasonable probability that the result of Petitioner's trial would have been more favorable had Binyard testified. *See, e.g.*, *Powe v. Wolfenbarger*, No. 11-11875, 2016 WL 1728777, at *8-9 (E.D. Mich. Apr. 29, 2016) (counsel's failure to present defense evidence did not prejudice defendant where

13

evidence was not inconsistent with prosecution evidence); *Jackson v. Hofbauer*, No. 08-14260, 2013 WL 5203773, at *3-5 (E.D. Mich. Sept. 16, 2013) (same); *Bixler v. Bell*, No. 06-11781, 2007 WL 4570073, at *6 (E.D. Mich. Dec. 26, 2007) (same).

### 5. Ineffective Defense Strategy

Petitioner asserts that it was ineffective for his trial attorney to concede that the victim was raped, and to take the more narrow approach that she was simply mistaken as to the identity of her attackers. Petitioner contends that given the lack of physical evidence, his attorney should have contested the fact that Hemphill was raped at all.

This assertion is exactly the type of hindsight criticism that *Strickland* forecloses. A claim of ineffective assistance of counsel "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689. It was an entirely reasonable strategy for defense counsel to raise a mistaken identity defense and not challenge the victim's allegation that she was the victim of a rape. Challenging the fact of the rape itself–calling the victim a liar instead of treating her as an honest but mistaken victim–would have carried with it the risk of inflaming the passions of the jury. Defense counsel was in the best position to view her demeanor on the witness stand and to judge her credibility and thereby determine how far to challenge the victim's testimony. Petitioner has not demonstrated that his counsel's decision to concede that the victim was raped constituted deficient performance.

14

### 6. Failure to Object to Reference to Prior Arrest

Petitioner asserts that his counsel should have objected to the admission of testimony regarding Petitioner's prior arrest. Again, this claim is subject to *de novo* review.

A police officer testified at trial that when she compiled photographs for the lineup identification procedure she found a photo of Petitioner from a prior arrest at the Campbell Apartments. (Dkt. #11-9, Pg. ID 946-47.) Petitioner has not shown that his counsel performed deficiently by failing to object to the reference to a prior arrest. The complained-of testimony was brief and isolated. Counsel may make a legitimate tactical decision to allow a brief improper comment pass rather than draw attention to it with an objection. See *Mann v. Rapelje*, No 14-11316, 2016 WL 3751950, at *5-6 (E.D. Mich. July 13, 2016); *Hills v. McQuiggin*, No. 08-14354, 2012 WL 1079727, at *23-24 (E.D. Mich. Mar. 30, 2012). Petitioner has failed to overcome the presumption that his counsel's failure to object to this testimony was not a reasonable tactical decision.

### 7. Failure to Advise Petitioner Regarding Right to Testify

Petitioner asserts that his counsel was ineffective for preventing him from testifying in his own defense. Petitioner alleges that his counsel told him that if he testified that the prosecutor would "eat him alive." He alleges that his counsel told him "if you want to take that stand I don't care. F— your brother if you want to, I don't care. But I would recommend that you don't because they have to prove that you are guilty. You don't have to prove you are innocent." (Dkt. #1-1, Pg. ID 53.) This claim is also reviewed *de novo*.

15

Although the right to testify is a fundamental right subject only to knowing and intelligent waiver, "waiver of certain fundamental rights can be presumed from a defendant's conduct alone, absent circumstances giving rise to a contrary inference." *United States v. Stover*, 474 F.3d 904, 908 (6th Cir. 2007). The Sixth Circuit repeatedly has recognized that, "'[a]lthough the ultimate decision whether to testify rests with the defendant, when a tactical decision is made not to have the defendant testify, the defendant's assent is presumed.'" *Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009) (quoting *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000)). "Barring any statements or actions from the defendant indicating disagreement with counsel or the desire to testify, the trial court is neither required to *sua sponte* address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant has waived the right on the record." *Webber*, 208 F.3d at 551 (citing *United States v. Joelson*, 7 F.3d 174, 177 (6th Cir. 1993) (other citations omitted)).

Nothing in the trial record suggests that Petitioner disagreed with his attorney's representation that the defense would not call any witnesses. Under these circumstances, waiver of the right to testify is presumed. Because Petitioner cannot show that his right to testify was impaired, he cannot demonstrate that counsel's performance was deficient. *Hodge*, 579 F.3d at 640. Therefore, this claim is without merit.

16

## 8. Failure to Object to Mugshot Reference

Petitioner's fifth habeas claim asserts that his counsel should have objected to

the police officer's characterization of the photograph used in the line-up as a

"mugshot." This claim, closely related to the claim discussed above, was raised in

Petitioner's direct appeal, and it was rejected on the merits by the Michigan Court of

Appeals. Petitioner has failed to demonstrate that the state court adjudication of the

claim was contrary to, or involved an unreasonable application of, clearly established

Supreme Court law under § 2254(d).

The Michigan Court of Appeals rejected this claim as follows:

> Defendant first argues his trial counsel provided ineffective
> assistance of counsel because he failed to object to testimony regarding
> the use of defendant's mug shot from an unrelated arrest in the
> photographic line-up. Because defendant did not file a motion for a new
> trial or evidentiary hearing pursuant to *People v. Ginther*, 390 Mich. 436
> (2005). This Court's review of unpreserved claims of ineffective assistance
> of counsel is limited to errors apparent on the record. *People v. Jordan*,
> 275 Mich. App. 659, 667(2007). The determination whether a defendant
> received ineffective assistance of counsel presents a mixed question of
> fact and constitutional law. *People v. LeBlanc*, 465 Mich. 575, 579 (2002).
> The trial court's factual findings are reviewed for clear error and its
> constitutional determinations are reviewed *de novo. Id.*

> To establish that he received the ineffective assistance of counsel,
> a criminal defendant must satisfy the two-part test first articulated in
> *Strickland v. Washington*, 466 U.S. 668 (1984). "First, the defendant must
> show that counsel's performance was deficient. This requires showing that
> counsel made errors so serious that counsel was not functioning as the
> 'counsel' guaranteed by the Sixth Amendment." *Strickland*, 466 U.S. at
> 687. In this respect, the defendant must overcome a strong presumption
> that counsel's performance constituted sound trial strategy. *Id.* at 690.
> Second, the defendant must show that trial counsel's deficient
> performance prejudiced his defense. *Id.* at 687. "To demonstrate
> prejudice, the defendant must show the existence of a reasonable
> probability that, but for counsel's error, the result of the proceeding would
> have been different." *People v. Carbin*, 463 Mich. 590, 599 (2001), citing

17

*Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Defendant argues that his trial counsel was ineffective for failing to object to the admission of the photographic line-ups, which included defendant's mug shot from an unrelated arrest. However, defendant failed to specify the rule of evidence on which his trial counsel should have based his objection. Based on his argument "that the evidence was irrelevant and prejudicial" we assume defendant believes the appropriate bases for his trial counsel's objections would have been MRE 402 (irrelevant evidence inadmissible) and MRE 403 (exclusion of relevant evidence on grounds of prejudice). Because neither rule precludes admission of the evidence and defendant cannot overcome the presumption that trial counsel's performance constituted sound trial strategy, defendant's trial counsel did not provide ineffective assistance. The decision whether to object to evidence is a matter of trial strategy. *People v. Horn*, 279 Mich. App. 31, 39 (2008). This Court is reluctant to second-guess trial counsel on matters of trial strategy, even if the strategy backfired. *People v. Caballero*, 184 Mich. App. 636, 640 (1990). This Court has acknowledged that "'there are times when it is better not to object and draw attention to an improper comment.'" *Horn*, 279 Mich. App. at 40, quoting *People v. Bahoda*, 448 Mich. 261, 287 n. 54 (1995). The same is true for unfavorable evidence. *People v. Rodgers*, 248 Mich. App. 702, 715 (2001). Here, evidence that defendant was arrested for an unrelated offense at the same location as the assault was unfavorable to defendant. Defense counsel may have made the conscious choice not to object and draw the jurors' attention to the unfavorable evidence. This presumption is bolstered by the fact that defense counsel filed a pretrial motion to suppress the identification evidence outside the presence of a jury. In light of this reasonable explanation and defendant's failure to provide any legal authority to the contrary, defendant has not overcome the strong presumption that defense counsel's performance was sound trial strategy.

*Milner*, 2013 WL 968100, at *2.

Applying the "doubly-deferential" standard created by § 2254(d) to claims brought under *Strickland*, and for the reasons discussed in Section III(A)(6) of this Opinion, this court cannot conclude that the state appellate court's rejection of this ineffective assistance claim was unreasonable.

### B. Prosecutorial Misconduct

18

Petitioner's second claim asserts that the prosecutor committed misconduct by eliciting testimony from a police officer that Petitioner was arrested at the Campbell Apartments two days prior to the date of the incident. Petitioner also contends that reference to Petitioner's photograph in the lineup procedure as a "mugshot" was unfairly prejudicial.

The controlling Supreme Court decision is *Darden v. Wainwright*, 477 U.S. 168 (1986). Under *Darden*, a prosecutor's improper comments violate a criminal defendant's constitutional rights if they "'so infect[] the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[E]ven if [a] prosecutor's conduct was undesirable or even universally condemned . . . it does not constitute a due process violation unless the conduct was so egregious so as to render the entire trial fundamentally unfair." *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000) (internal punctuation and citations omitted). Review of this claim is also *de novo* because the of the state court's mistaken application of Rule 6.508(D)(2).

As indicated above, the prosecutor introduced the evidence about Petitioner's prior arrest in the context of the police officer's assembly of the photographic lineup, and based on the victim's statement to police that she had seen her attackers previously at that apartment building. Contrary to Petitioner's allegations, the prosecutor did not use the evidence to suggest that Petitioner was a "bad man" because he had been arrested before.

The nature of the prior arrest was never revealed to the jury, and the reason for the photograph's inclusion in the lineup was not explored further. Indeed, the prosecutor

19

specifically told the police officer not to reveal the nature of the call that led to

Petitioner's prior arrest. (Dkt. #11-9, Pg. ID 946-47.) The court therefore finds that this

brief and isolated reference during a long trial to the fact that Petitioner had a prior

arrest did not render Petitioner's trial fundamentally unfair. *Byrd v. Collins*, 209 F. 3d

486, 532 (6th Cir. 2000) (Prosecutor did not commit misconduct rendering trial

fundamentally unfair where improper comments were relatively isolated).

### C. Sentencing Guidelines

Petitioner's third claim asserts that the trial court incorrectly scored an offense

variable of the sentencing guidelines. The state court's application of its sentencing laws

and guidelines, however, "is a matter of state concern only," *Howard v. White*, 76 F.

App'x 52, 53 (6th Cir. 2003), and "federal habeas corpus relief does not lie for errors of

state law," *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); see also *Pulley v. Harris*, 465

U.S. 37, 41 (1984) (stating that "[a] federal court may not issue the writ on the basis of a

perceived error of state law"). "In conducting habeas review, a federal court is limited to

deciding whether a conviction violated the Constitution, laws, or treaties of the United

States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Thus, Petitioner's contention that

the trial court miscalculated the sentencing guidelines is not a cognizable claim on

federal habeas corpus review. *Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007);

*McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006); *Robinson v. Stegall*,

157 F. Supp. 2d  802, 823 (E.D. Mich. 2001). Habeas relief is not warranted on

Petitioner's sentencing claim.

### D. Effective Assistance of Appellate Counsel

20

Petitioner's fourth claim asserts that his appellate counsel was ineffective for failing to raise the allegations of ineffective assistance of counsel and prosecutorial misconduct Petitioner raised in his motion for relief from judgment. Because the underlying claims are without merit for the reasons discussed above, appellate counsel's failure to raise them on direct review was not deficient and was not prejudicial. "[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001). This claim is without merit.

### E. Jurisdiction of Trial Court

Petitioner's sixth and seventh claims contend that the trial court failed to acquire jurisdiction because of defects in the charging documents and because the state district court failed to file a document in the state circuit court. The determination of whether a state court is vested with jurisdiction under state law over a criminal case is a function of the state courts, not the federal courts. *Wills v. Egeler*, 532 F. 2d 1058, 1059 (6th Cir. 1976); *see also Daniel v. McQuiggin*, 678 F.Supp. 2d 547, 553 (E.D. Mich. 2009). The Sixth Circuit has noted that "[a] state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review." *Strunk v. Martin*, 27 Fed. Appx. 473, 475 (6th Cir. 2001). Petitioner's claim that the trial court lacked jurisdiction to try his case raises only an issue of state law, because it questions the interpretation of Michigan law, and is therefore not cognizable in federal habeas review. *See Toler v. McGinnis*, 23 Fed. Appx. 259, 266 (6th Cir. 2001) (district court lacked authority on habeas review to review petitioner's claim that the state court erred

21

in refusing to instruct jury on the requirements for extraterritorial jurisdiction, because the claim was contingent upon an interpretation of an alleged violation of state law).

## IV. CERTIFICATE OF APPEALABILITY

In order to appeal the court's decision, Petitioner must obtain a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002).

Here, jurists of reason would not debate this court's analysis with respect to any of Petitioner's claims because they are devoid of merit. The court will therefore deny a certificate of appealability. Furthermore, the court will deny Petitioner permission to appeal *in forma pauperis* because any appeal would not be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V. CONCLUSION

IT IS ORDERED that the petition for a writ of habeas corpus (Dkt. #1) is DENIED with prejudice.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

IT IS FURTHER ORDERED that leave to appeal *in forma pauperis* is DENIED.

Dated:  January 3, 2017                     s/Robert H. Cleland
                                            ROBERT H. CLELAND
                                            UNITED STATES DISTRICT JUDGE

22

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 3, 2017, by electronic and/or ordinary mail.

 s/Shawna C. Burns
Case Manager Generalist
(810) 984-2056